ELSIE WELLS, Indiv. and as Adm'r of the Estate of Robert Wells, Deceased, Plaintiff-Appellant, v. DOUGLAS TRAVIS *et al.*, Defendants-Appellees.

Second District    No. 2—95—0686

Opinion filed October 16, 1996.

HUTCHINSON, J., dissenting.

Raymond C. Rose, of Kanoski & Associates and Michael A. Fleming, of Cusack, Fleming, Gilfillan & O'Day, both of Peoria, for appellant.

Louis A. Varchetto, of Wylie, Mulherin, Rehfeldt & Varchetto, of Wheaton, for appellee Douglas Travis.

Robert A. Strelecky and Barbara M. Prohaska, both of Wildman, Harrold, Allen & Dixon, of Lisle, for appellee Karim Valika.

JUSTICE DOYLE delivered the opinion of the court:

This case examines the question of when plaintiff received sufficient information under the discovery rule to trigger the running of the limitations period in a medical malpractice action.

On February 3, 1993, plaintiff, Elsie Wells, special administrator of the estate of Robert G. Wells (decedent), sued defendant, Douglas Travis, M.D. (Travis), alleging a cause of action for medical negligence for failure to diagnose and treat diabetes mellitus that resulted in decedent's death. On January 19, 1995, plaintiff filed a first amended complaint adding defendant Karim Valika, M.D. (Valika). Counts IV, V, and VI of plaintiff's amended complaint alleged causes of action under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1994)), the family expense statute (750 ILCS 65/15 (West 1994)), and the Survival Act (755 ILCS 5/27—6 (West 1994)), respectively. Valika filed a motion to dismiss with prejudice pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(5) (West 1994)), asserting that the allegations listed in the amended complaint were time-barred by the two-year statute of limitations applicable to medical negligence causes of action (see 735 ILCS 5/13—212(a) (West 1994)). The trial court granted Valika's motion to dismiss with prejudice. This appeal followed.

Plaintiff contends the trial court erred as a matter of law in granting Valika's section 2—619(a)(5) motion.

Plaintiff's suit arose from the death of the decedent on February 10, 1991. On February 7, 1991, decedent was admitted to Sherman Hospital after a referral from his family physician, Travis. Travis requested a consultation by Valika, and on February 8, 1991, Valika diagnosed decedent as suffering from newly discovered diabetes mellitus with a hypersmolar condition and severe hyperglycemia. Decedent died on February 10, 1991, from multiple complications.

On February 3, 1993, plaintiff filed suit against Travis, asserting he had been medically negligent in failing to diagnose and treat decedent's diabetes mellitus. The complaint alleged that decedent "was caused to die due to complications resulting from undiagnosed and untreated diabetes mellitus." Plaintiff's attorney filed a section 2—622 affidavit on February 3, 1993, and a written health professional's report by Robert Lindemann, M.D., on June 28, 1993. See 735 ILCS 5/2—622(a)(1) (West 1994). The report indicated Lindemann had reviewed decedent's treatment records "from 1983 through the time of his death, including his stay in *** [the] [h]ospital." The record contains an August 21, 1992, report by Lindemann to his employer, Saprano, Inc., criticizing departures from good medical care by Travis. In this report Lindemann stated he "did not feel there was any malpractice involved in [decedent's] care once he was admitted to the hospital since he developed complications that can occur despite the best of treatment." As her only response to Rule 220 interrogatories questioning the date plaintiff first learned of Lin-

demann's opinions, plaintiff attached Lindemann's August 21, 1992, report.

In depositions, Travis' defense experts, William Hulesch, M.D., and David Baldwin, M.D., each criticized the medical care rendered by Valika. The depositions of Hulesch and Baldwin were taken on December 22, 1994, and December 28, 1994, respectively. In their depositions, both witnesses stated: (1) Valika mismanaged the decedent's care; (2) Valika deviated from the acceptable standard of care; and (3) decedent would have survived if Valika had treated decedent correctly.

Following the discovery depositions of Hulesch and Baldwin, plaintiff filed a motion for leave to file an amended complaint. The motion was granted and the amended complaint, adding Valika as a defendant, was filed on January 19, 1995. Plaintiff alleged in her amended complaint that the dates of the Hulesch and Baldwin depositions were the "first dates" plaintiff knew or reasonably should have known that Valika "wrongfully caused" decedent's death.

■ We turn first to the nature of appellate review of a trial court's dismissal of a complaint pursuant to section 2—619. The purpose of section 2—619 is to allow for the disposition of questions of law and easily proved fact issues at the outset of the case. See, *e.g.*, *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Unlike a motion with respect to the pleadings brought under section 2—615 (*Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994) (section 2—615 motion attacks only the legal sufficiency of the complaint and deals exclusively with defects appearing on the face of the complaint)), a trial court ruling on a section 2—619 motion may consider the "pleadings, depositions, and affidavits" (*Zedella*, 165 Ill. 2d at 185). We have stated:

"The motion should be granted and the complaint dismissed if, after construing the document in the light most favorable to the nonmoving party, the court finds that no set of facts can be proved which would entitle the plaintiff to recover. [Citations.] When reviewing the propriety of a section 2—619 dismissal, all well-pleaded facts alleged in the complaint are taken as true. [Citation.] Conclusions of law or conclusions of material fact unsupported by specific factual allegations must be disregarded. [Citation.] As such, the reviewing court is concerned solely with a question of law presented by the pleadings." *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 98-99 (1993).

Finally, an appellate court conducts an independent review of the propriety of dismissing the complaint and, therefore, is not required to defer to a trial court's reasoning. *Nikolic*, 242 Ill. App. 3d at 99.

■ The issue here is whether the trial court erred as a matter of

law in granting Valika's section 2—619(a)(5) motion. Parties claiming medical negligence must file their complaints within two years of "the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the existence of the injury or death for which damages are sought in the action." 735 ILCS 5/13—212(a) (West 1994). Our supreme court has stated that "[t]he statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981) (discussing the operation of the discovery rule in medical negligence cases). When this occurs, the injured person is obligated to inquire further as to the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156. The court may determine—as a matter of law—when the injured party knew or reasonably should have known both of the injury and that it was wrongfully caused only in those situations in which the undisputed facts lead to a single conclusion. *Witherell*, 85 Ill. 2d at 156. In most cases though, this is a disputed question for the fact finder. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). As a matter of law, the latest date the statute of limitations contained in section 13—212(a) can commence is the date the plaintiff files the initial lawsuit. *McCormick v. Uppuluri*, 250 Ill. App. 3d 386, 391 (1993). However, the *McCormick* rule may not apply when a plaintiff fails to discover that a particular defendant wrongfully caused a decedent's death because of the defendant's misstatement, concealment, or fraud. See *Neade v. Engel*, 277 Ill. App. 3d 1004, 1005-06, 1009 (1996).

■ In the present case, plaintiff argues that she had no information implicating Valika in the alleged malpractice until the depositions of Travis' experts in December 1994. Plaintiff contends that there was no reason for her to have known earlier of her claim against Valika, particularly in view of the report of plaintiff's expert, Lindemann, who expressly exonerated personnel treating decedent in the hospital, including Valika. Applying the discovery rule of section 13—212, plaintiff asserts that her first amended complaint against Valika was timely filed on January 19, 1995, within two years of the December 1994 depositions of Travis' experts.

Defendant contends that the trial court correctly determined that the two-year discovery rule was triggered as a matter of law on August 21, 1992, when plaintiff became aware of Lindemann's report implicating Travis as deviating from the acceptable standard of care in his diagnosis and treatment of decedent. Defendant argues that because the first amended complaint, first naming defendant, was filed more than two years after August 21, 1992, plaintiff's action

against defendant was time-barred pursuant to section 13—212. We agree.

The essence of plaintiff's position is that a person is not charged with knowledge sufficient to trigger the running of the limitations period as to any particular defendant until the person knows or reasonably should know that the injury was wrongfully caused by the negligence *of that defendant.* The supreme court has expressly disavowed any such interpretation of the discovery rule, holding, instead, that the statute of limitations begins to run when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College,* 88 Ill. 2d at 416. At that point the burden is upon the person to inquire further as to the existence of a cause of action. *Witherell,* 85 Ill. 2d at 156. The supreme court has explained the reason for this rule as follows:

> "We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury *and the defendants' negligent conduct.* Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await legal determination. [Citation.] Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interest." (Emphasis added.) *Nolan v. Johns-Manville Asbestos,* 85 Ill. 2d 161, 170-71 (1981).

Knowledge that an injury has been "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct. *Saunders v. Klungboonkrong,* 150 Ill. App. 3d 56, 59 (1986); *Bates v. Little Company of Mary Hospital,* 108 Ill. App. 3d 137, 140 (1982). We believe that the rejection of this fundamental principle, as urged by plaintiff and advocated by the dissenting justice, would represent an unwarranted departure from existing precedent.

The injury complained of in this case is the death of decedent. It is evident that plaintiff had reason to know of the death and that actionable conduct might be involved when plaintiff received the August 21, 1992, report of Lindemann implicating Travis and, after reviewing records of decedent's hospital treatment, exculpating Valika as a negligent party. As a matter of law, therefore, the limitations period commenced on that date. Because plaintiff's knowledge of the contents of Lindemann's August 21, 1992, report was undisputed, no relevant issue of fact was presented.

This reasoning is directly followed in *McCormick v. Uppuluri*, 250 Ill. App. 3d 386. In that case, the plaintiff alleged that the defendant-physician negligently treated him for a kidney ailment during the plaintiff's stay in a hospital. The defendant asserted the section 13—212 statute of limitations as an affirmative defense and moved for summary judgment on that issue. The defendant predicated his motion on the fact that the plaintiff had filed a previous action against several other physicians for the same injury, which action was voluntarily dismissed. The defendant argued in his motion for summary judgment that the plaintiff, at the latest, must have known of his injury and that it was wrongfully caused when he filed the earlier lawsuit against other physicians. Because the plaintiff did not file suit against the defendant within two years of that date, the defendant argued that the action was time-barred as a matter of law.

The plaintiff in *McCormick* asserted that a genuine issue of material fact existed on the issue of when he first learned, for limitations purposes, that he had a cause of action against the defendant. The plaintiff explained that, following his voluntary dismissal of the previous suit, he received a written expert opinion stating that the defendant deviated from the acceptable standard of care. The plaintiff submitted an affidavit asserting that " '[t]his was the first time that he came into possession of the knowledge that his injuries had been wrongfully caused by the aforesaid defendant.' " 250 Ill. App. 3d at 389. The plaintiff argued, therefore, that he had two years from this date to file his action against the defendant.

In affirming the entry of summary judgment for the defendant, the appellate court rejected the plaintiff's contention. Citing *Knox College* and *Nolan*, the court held that "the running of the limitations clock is not postponed until the plaintiff first obtains knowledge of defendant's negligent conduct. Rather, and as noted, the limitations clock commences when 'the injured person becomes possessed of sufficient information concerning his injury to determine whether actionable conduct is involved.' " *McCormick*, 250 Ill. App. 3d at 391, quoting *Knox College*, 88 Ill. 2d at 416. The court held that the plaintiff's filing of the previous lawsuit against other physicians established as a matter of law that the plaintiff had sufficient information concerning his injury and its cause to trigger the limitations period. Even if the plaintiff did not have such actual knowledge, the court held that it must be imputed to him. *McCormick*, 250 Ill. App. 3d at 391.

Similarly, in the present case, plaintiff cannot be heard to argue that she did not possess sufficient knowledge on August 21, 1992, concerning the death and its cause to put a reasonable person on in-

quiry to determine whether actionable conduct was involved, when it is undisputed that she was in possession of the report of her own expert concluding that the conduct of Travis departed from acceptable medical standards. If the requisite knowledge of facts triggering a duty to investigate must be presumed from the filing of a malpractice claim against other defendants, it follows that such knowledge must also be presumed from plaintiff's awareness of her consultant expert's report criticizing departures from the proper standard of medical care, regardless of whom the expert identified as a responsible party. The plaintiff had two years from the date of her expert's report to conduct her inquiry to determine whether, and against whom, a lawsuit could be filed. If plaintiff was unsatisfied that Lindemann had correctly identified all persons responsible for the alleged malpractice, she had two years to conduct further inquiry or to consult any other expert.

Even before the supreme court addressed this issue in *Nolan*, the same issue had been considered and resolved by this court in *Guebard v. Jabaay*, 65 Ill. App. 3d 255 (1978). There, the plaintiff timely filed a medical malpractice action against other defendants but claimed not to have discovered that Dr. Angell had performed one of the surgeries on her knee until this information emerged during the plaintiff's deposition of one of the original defendants. The plaintiff argued that, because she filed an amended complaint adding a claim against Angell within two years of this discovery of his involvement, the trial court erred in dismissing her complaint against Angell as time-barred by the statute of limitations. This court rejected the plaintiff's interpretation of the discovery rule, commenting as follows:

> "Plaintiff's contention in the present case would extend the discovery rule as applied to medical malpractice cases to mean that the cause of action accrues when the person injured learns, or reasonably should have learned, of the *identity* of the person responsible for his injury, even though he earlier knew of the injury itself. We are not aware of any case in which the discovery rule has been so extended or applied and we are not convinced that the logic of the rule warrants such an extension by us. [Citation.] In applying the discovery rule the court will balance the hardship on the plaintiff caused by the bar of his suit against the increased burden of a defendant to obtain proof of his defense after the passage of time. [Citations.] The hardship imposed upon a party who is unaware he has an actionable injury until after the limitations period has run is much more severe than that imposed upon a party who knows, or reasonably should know, he has suffered an actionable injury but does not learn the identity of the

person who injured him until after the limitations period has passed. The former is in no position to take advantage of the limitations period in which to determine the identity of the party injuring him. The latter, however, knows he has a cause of action, has the time given by the limitations period to attempt to learn the identity of the person who injured him and is not in the position of being barred before ever knowing of his right to sue." (Emphasis in original.) 65 Ill. App. 3d at 258-59.

Plaintiff argues that the nature of decedent's death was such that it failed to signal any actionable wrongdoing. However, this argument is wholly irrelevant to the basis of our decision, *i.e.*, that, subsequent to the death, plaintiff was placed on inquiry of actionable conduct based upon the August 21, 1992, report of Lindemann, thereby triggering the running of the limitations period.

Plaintiff relies on *Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209 (1987), for the proposition that, under the discovery rule, the limitations period is not triggered as to any particular defendant until the plaintiff has reason to know that the injury was wrongfully caused by the negligence of that defendant. A careful reading of *Arndt*, however, reveals that it does not stand for plaintiff's proposition.

In *Arndt*, the plaintiff's decedent died in a hospital on January 18, 1983. On December 21, 1984, the plaintiff sued the hospital for malpractice and designated the defendant-physician as a respondent in discovery. On September 18, 1985, the plaintiff filed suit against the defendant. In a subsequent amended complaint, the plaintiff alleged that she did not learn of the defendant's negligence until his discovery deposition was taken on May 14, 1985. In view of the fact that the plaintiff was at her husband's bedside and knew when he died, the trial court determined that the plaintiff failed to file suit against the defendant until more than two years after the death. The trial court, therefore, dismissed the action as time-barred, refusing to recognize that the discovery rule could postpone the beginning of the limitations period beyond the date of death.

The appellate court reversed, concluding, consistent with case law cited herein, that the limitations clock did not begin to tick until the plaintiff had reason to know both of the death and that the death was wrongfully caused. The appellate court understandably focused upon the May 14, 1985, deposition, in which the defendant's negligence was discovered, as being the date the plaintiff first had reason to know of wrongful causation. The defendant did not argue, as was argued in *McCormick*, that the plaintiff was aware of wrongful causation no later than the date of her December 21, 1984, lawsuit

against the hospital. Indeed, any such argument would have been futile considering that the plaintiff had filed suit against the defendant well within two years of her suit against the hospital. Therefore, the only relevant date proposed for extending the commencement of the limitations period beyond the date of death was the date of plaintiff's discovering the defendant's negligence, which was accepted by the appellate court as tantamount to discovery of wrongful causation.

Unlike *McCormick* (previous filing of suit against other defendants triggered statute) and the present case (statute triggered by report of plaintiff's expert), no event earlier than the date of the plaintiff's learning facts of the defendant's negligence was argued to the *Arndt* court as imparting knowledge of wrongful causation. Consequently, the discovery of wrongful causation was regarded by the court as coinciding with the discovery of the defendant's negligence. In view of the parties' positions, it was unnecessary for the court to look further as there was no issue of whether under different circumstances, as here, these events could occur separately, thereby producing a different outcome. Accordingly, despite excerpts quoted by plaintiff from the decision, we do not read *Arndt* as supporting plaintiff's proposition that knowledge of wrongful causation cannot be acquired in advance of plaintiff's having reason to know of the negligence of a particular defendant. We note that the same appellate district, in *McCormick*, later expressly rejected any such proposition. *McCormick*, 250 Ill. App. 3d at 391.

■ Plaintiff further argues that an exception to the well-established principles enunciated in *Nolan, McCormick*, and *Guebard* is warranted here because plaintiff's compliance with the health professional certification requirements of section 2—622 resulted in her development of information *negating* the existence of a cause of action against Valika. In essence, plaintiff contends that she was lulled into foregoing any potential investigation of Valika's conduct by the misleading report of her consultant, Lindemann, who exonerated any person treating decedent after his admission to the hospital.

The appellate court considered a similar argument in *Beasley v. Abusief*, 146 Ill. App. 3d 54 (1986). In that case, the plaintiff's first section 2—622 consultant filed a report exonerating the defendant-surgeon of malpractice. Approximately 10 months later, a second consultant rendered an opinion concluding that the defendant had been negligent in the surgery. After hearing evidence, the trial court found in favor of the defendant on his limitations defense. On appeal, the plaintiff argued that the trial court erred in not directing a verdict in the plaintiff's favor on this issue. The plaintiff contended

that her first consultant's opinion, which negated a cause of action, should have been considered as tolling the two-year limitations period until the plaintiff received the second consultant's section 2—622 certification of negligence. Plaintiff asserted that, in the face of the initial opinion, she could not have filed an action against the defendant in good faith until she received a contrary opinion.

The appellate court recognized the dilemma confronting a person in plaintiff's position but rejected the notion that a consultant's opinion negating negligence could be used to toll the plaintiff's allotted two-year period for identifying responsible parties. The court reasoned:

> "Holding that the limitation period is not triggered until a prospective malpractice plaintiff secures an expert witness qualified to testify to the described necessary elements for a *prima facie* case would clearly extend the limitation period unduly and leave the four-year period of section 13—212, after which a defendant has absolute repose, as the only substantial protection that such a defendant would have against stale claims.
>
> \*\*\* Moreover, recognizing that professionals are reluctant to be critical of their brethren, we would be apprehensive that a medical opinion detrimental to a cause of action for malpractice is likely to exist in a large number of cases. The [tolling] rule requested by plaintiffs would be likely to create almost as serious a problem as would a rule that the limitation period does not begin to run until a favorable medical opinion is available." 146 Ill. App. 3d at 60.

In view of established precedent, we will not create an exception to the statute of limitations because plaintiff elected to rely on the opinion of her chosen expert rather than continuing her investigation. This court has recognized an exception to the statute when there is evidence that a defendant has acted to conceal evidence of his liability. *Neade*, 277 Ill. App. 3d 1004. The record of the present case discloses no facts which could invoke this exception. If evidence of fraud or concealment existed, it was plaintiff's burden to present it in opposition to defendant's section 2—619 motion.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

THOMAS, J., concurs.

JUSTICE HUTCHINSON, dissenting:
The majority concludes plaintiff would not be able to prove any

set of facts demonstrating that her amended complaint against Valika was timely under section 13—212 of the Code (735 ILCS 5/13—212 (West 1994)). I freely admit that upon remand plaintiff probably would not be able to demonstrate her amended complaint was timely. In terms of the ultimate result in the present case, there is scant difference between my position and that of the majority. However, the gulf of our disagreement and its ramifications for injured persons in future medical negligence cases are immense. In its affirmance of the trial court's grant of summary judgment—despite the fact the trial court itself apparently failed to determine the date on which the statute of limitations ran—the majority creates the potential that plaintiffs will inequitably be denied the possibility of redress despite the reasonableness of the manner in which they inquire into the wrongful cause of injury or death. Therefore, I respectfully dissent.

My disagreement with the majority turns on our differing views of the interaction between section 2—622 of the Code (735 ILCS 5/2—622 (West 1994)) and the discovery rule announced by the Illinois Supreme Court in *Witherell v. Weimer*, 85 Ill. 2d 146 (1981). In *Witherell* our supreme court stated the statute of limitations in medical negligence actions "starts to run when a person knows or reasonably should know of his injury and also *knows or reasonably should know* that it was wrongfully caused." (Emphasis added.) *Witherell*, 85 Ill. 2d at 156. Assuming that an injured person knows or reasonably should know of his injury, the emphasized portion of this quotation sets forth two triggers that commence the statute of limitations: (1) actual knowledge that the injury was wrongfully caused; or (2) information and/or circumstances that would put a reasonable person on notice, *i.e.*, constructive notice, that the injury was wrongfully caused.

I believe that the majority's application of section 2—622 precludes any examination of reasonableness. This is contrary to the above-quoted language from *Witherell* and section 13—212 of the Code (see 735 ILCS 5/13—212(a) (West 1994) (medical negligence action must be brought within two years "after the date on which the claimant knew, or *through the use of reasonable diligence should have known* *** of the injury or death")). The majority states "[b]ecause plaintiff's knowledge of the contents of Lindemann's August 21, 1992, report was undisputed, no relevant issue of fact was presented." 284 Ill. App. 3d at 287. Therefore, the majority apparently believes the mere fact that a section 2—622 investigation has been conducted is sufficient to put any and all injured persons on constructive notice under almost all possible circumstances. Such a *per se* rule forecloses—once a section 2—622 report and affidavit are

filed—any examination of the reasonableness or unreasonableness of an injured party's assertion that he did not know his injury was wrongfully caused.

I respectfully submit that a section 2—622 investigation should not serve as a substitute for making a factual determination whether an injured party reasonably should have known his injury was wrongfully caused. There is nothing magical about a section 2—622 investigation. Its validity, accuracy, and comprehensiveness may be affected by numerous factors completely beyond the control of the injured party. Among these factors are (1) the misconduct by defendants delaying the discovery of the wrongful cause of injury or death (see *Neade v. Engel*, 277 Ill. App. 3d 1004, 1005-06, 1009 (1996) (holding that the statute of limitations did not commence—despite the filing of a prior complaint against another physician—until the defendant's deposition made the plaintiff aware of the defendant's involvement in the decedent's death, where the plaintiff failed to discover the defendant's involvement because of the defendant's misstatement, concealment, or fraud)); (2) the negligent maintenance or preparation of the medical record by defendants or their employees or agents (see *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 1049 (1995) (stating a "*worst case situation*, medical records personnel might be involved in a cover-up" (emphasis added), thereby implying such personnel might also innocently fail to provide the section 2—622 expert with all incriminating records)); (3) the causal connection between the potential defendant's conduct and the injury or death is so complex it might be reasonable for a section 2—622 expert to fail to identify a potential defendant; and (4) the negligence of the section 2—622 reviewing health professional. In terms of the fourth factor, I highlight the legislature's decision to make section 2—622 health professionals immune from civil liability, provided they prepare their reports in good faith. 735 ILCS 5/2—622(f) (West 1994). Therefore, it is all the more inequitable and unjust to make an injured person bear the consequences of such an expert's failure. I would be more circumspect than the majority in applying section 2—622.

All the above factors present valid potential factual problems with a section 2—622 investigation that might render reasonable an injured person's failure to continue to inquire and learn a defendant's conduct was a wrongful cause of injury or death. I would not close off consideration of these factors by way of a *per se* rule.

The majority makes the commencement of the statute of limitations a question of law. The only question of fact would be the date on which the investigation was completed. Our supreme court has stated that the commencement of the statute of limitations in medi-

cal negligence cases is "[i]n many, if not most, cases *** a disputed question to be resolved by the finder of fact." *Witherell*, 85 Ill. 2d at 156; see also, *e.g., Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994) (rule applied in legal negligence cause). This longstanding and often announced rule should not be abandoned on the basis of an unintended interaction among section 13—212(a), section 2—622, and the discovery rule. This is buttressed by the fact section 2—622 is a pleading requirement designed to limit frivolous lawsuits; it is not a substantive defense designed to preempt an injured person's day in court. See *McCastle v. Sheinkop*, 121 Ill. 2d 188, 193 (1987); *Steinberg*, 276 Ill. App. 3d at 1042; *Miller v. Gupta*, 275 Ill. App. 3d 539, 543 (1995); *Moscardini v. Neurosurg, S.C.*, 269 Ill. App. 3d 329, 334-35 (1994). I agree with the majority that the discovery of a wrongful cause requires plaintiffs to inquire further into any possible causes of action. *Witherell*, 85 Ill. 2d at 156. However, I part company with my colleagues on whether a plaintiff who has ceased her inquiry into the cause of injury or death—in reliance on the report of a section 2—622 expert whose participation is both mandated and immunized by the State—as a matter of law is obligated to continue her inquiry or risk the limitations period running against an undiscovered defendant. According to our supreme court, the statute of limitations commences when "the injured person becomes possessed of sufficient information concerning his injury and its cause to *put a reasonable person on inquiry to determine whether actionable conduct is involved*." (Emphasis added.) *Knox College*, 88 Ill. 2d at 416. The majority interprets this passage as creating a one-way rachet: once an injured person's duty to inquire arises, it cannot abate. I disagree.

The majority states *Beasley v. Abusief*, 146 Ill. App. 3d 54 (1986), rejected the argument that the opinion of a plaintiff's first consultant, "which negated a cause of action, should have been considered as tolling the two-year limitations period until the plaintiff received the second consultant's *section 2—622 certification* of negligence." (Emphasis added.) 284 Ill. App. 3d at 292. *Beasley* should not be relied on. First, *Beasley* did not involve a report by a section 2—622 expert. Indeed, it could not. The *Beasley* complaint was filed on November 28, 1983. Section 2—622 was added to the Code of Civil Procedure (735 ILCS 5/1—101 *et seq.* (West 1994)) by Public Act 84—7, section 1, on August 15, 1985. Pub. Act 84—7 § 1, eff. August 15, 1985. Therefore, section 2—622 applies only to cases filed on or after August 15, 1985. See Ill. Rev. Stat. 1985, ch. 110, par. 2—622, citing Ill. Rev. Stat. 1985, ch. 110, par. 2—114 (stating that Public Act 84—7 " 'takes effect August 15, 1985, and applies to all cases

filed on or after that date' "). Understandably, therefore, *Beasley* does not discuss section 2—622 or its effect on the *Witherell* discovery rule and whether it is reasonable for a plaintiff to suspend inquiries in reliance on a section 2—622 report and consequently fail to discover a particular defendant's conduct was a wrongful cause of injury or death. Second, unlike the present case, the plaintiff in *Beasley* had an opportunity to present evidence on whether the limitations period had run. *Beasley*, 146 Ill. App. 3d at 55-56, 59 (a jury determined when the plaintiff " 'knew, or through the use of reasonable diligence, should have known' " her injury was caused by defendant's treatment). Had plaintiff in the present case been afforded the same opportunity to present evidence as the *Beasley* plaintiff, I would have no trouble affirming the trial court. My objection is to the *per se* rule fashioned by the majority that forecloses any examination of the nature, quality, and validity of the State-mandated section 2—622 examination and report.

I respectfully suggest that the majority's *per se* rule imposes hardships on injured persons far outweighing its benefits. The purpose of a statute of limitations is to balance the hardship to injured persons barred from presenting their issues, against the hardship to defendants based on the increasing difficulty of proof with the passage of time. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 167-68 (1981). Medical negligence defendants will not be burdened by increasing difficulties of proof. Medical negligence cases typically turn on opinion witnesses to establish the standard of care and breach of that standard. See *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 70 (1992). This testimony, like the section 2—622 reports, is premised on medical records. The utility of these records, unlike the memory of occurrence witnesses in traditional negligence cases, is unaffected by the passage of time. Therefore, there is little, if any, hardship to defendants based on increasing difficulty of proof. Conversely, the majority's *per se* rule drastically limits the applicability of the discovery rule. This, in conjunction with the good-faith immunity provided to section 2—622 health professionals, increases the likelihood injured persons will be left without recourse. Additionally, refusing to adopt a *per se* constructive notice rule would not, indeed by law it could not, extend an injured person's time to bring suit beyond section 13—212(a)'s absolute four-year date. See 735 ILCS 5/13—212(a) (West 1994) (stating that "in no event shall *** [a medical negligence] action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death").

Therefore, I would reverse the trial court's order entering sum-

mary judgment and remand the cause for either a full evidentiary hearing or a bifurcated trial. The issue to be determined would be whether Lindemann's investigation or the resulting section 2—622 report suffered from any defect sufficient to render reasonable plaintiff's failure to discover Valika's conduct was a wrongful cause of decedent's death.