BRENDA L. CHADWICK, Plaintiff-Appellant, v. IMAD AL-BASHA, Defendant-Appellee.

Second District   No. 2—97—0224

Opinion filed March 19, 1998.

BOWMAN, J., dissenting.

Constance Augsburger, of Law Offices of Dennis Schumacher, P.C., of Mt. Morris, for appellant.

Jeffry S. Spears and Bruce L. Carmen, both of Hinshaw & Culbertson, of Rockford, for appellee.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Brenda Chadwick, appeals from the January 23, 1997, order of the circuit court of Winnebago County dismissing her complaint with prejudice. In her complaint, the plaintiff sought damages against the defendant, Imad Al-Basha, for violations of sections 2—108 and 2—109 of the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/2—108, 2—109 (West 1996)). The trial court dismissed the complaint after the plaintiff failed to file the supporting attorney's affidavit and physician's report required by section 2—622 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—622 (West 1996)). On appeal, the plaintiff argues that the trial court erred in concluding that her complaint was predicated upon medical malpractice and that she was therefore obligated to comply with the requirements of section 2—622(a) of the Code. We agree with the plaintiff and reverse and remand the cause for further proceedings.

The following facts are taken from the plaintiff's complaint. In June 1994, the plaintiff was being treated as a voluntary patient at the Singer Mental Health and Developmental Center (Singer) in Rockford. The defendant, a psychiatrist, was employed at Singer as an independent contractor. At some point during the plaintiff's treatment, she was involuntarily transferred to another unit within Singer. As a result of this transfer, the plaintiff was placed under the care of the defendant.

After the transfer, the plaintiff's treatment plan was revised to include several new restrictions, including the loss of telephone privileges and a prohibition against visitors. The plaintiff refused to sign the new treatment plan because she disagreed with the new restrictions. During an emotional discussion between the plaintiff and her therapist about the revised treatment plan, the plaintiff broke a window.

After this incident, the defendant verbally ordered the plaintiff into seclusion. After the plaintiff was in seclusion, she was ordered to remove her jewelry. While removing her jewelry, the plaintiff complained to staff members about her displeasure in having to do so. The defendant observed this exchange between the plaintiff and the staff members and verbally ordered that the plaintiff be placed in restraints. The defendant further ordered that the plaintiff was to remain in restraints until she was calm for one hour and until she agreed to comply with the revised treatment plan. Approximately 1½ hours later, the plaintiff agreed to comply with the revised plan and was released from the restraints.

■ On June 27, 1996, the plaintiff filed a five-count complaint against the defendant. The complaint alleged the following theories of liability: (1) false imprisonment; (2) battery; (3) assault; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. Each of these counts specifically alleged that the defendant had violated sections 2—108 and 2—109 of the Mental Health Code (405 ILCS 5/2—108, 2—109 (West 1996)). Section 2—108 requires that all restraint orders be in writing and prohibits the use of restraints to punish or discipline a patient or as a convenience for the staff. 405 ILCS 5/2—108 (West 1996). Similarly, section 2—109 requires that all seclusion orders be in writing. 405 ILCS 5/2—109 (West 1996). The plaintiff alleged that, as a result of the defendant's violation of these provisions, she was unlawfully restrained and secluded against her will.

On August 1, 1996, the defendant filed a motion to dismiss the plaintiff's complaint pursuant to sections 2—619 and 2—622(g) of the Code (735 ILCS 5/2—619, 2—622(g) (West 1996)). The defendant argued that section 2—622(a) required the plaintiff to support her complaint with an attorney's affidavit and a health care professional's report attesting that the plaintiff had a reasonable and meritorious cause for filing her action (see 735 ILCS 5/2—622(a) (West 1996)). The defendant concluded that the plaintiff's failure to file the required affidavit and report required dismissal of her complaint pursuant to section 2—619 of the Code.

The plaintiff responded to the motion by arguing that section 2—622 did not apply to her action. Specifically, the plaintiff argued that her complaint did not sound in medical malpractice, but instead sought to collect damages for the defendant's alleged violations of the Mental Health Code discussed above. The plaintiff argued that no expert analysis was required to evaluate the defendant's conduct as he clearly did not follow the procedure required by the Mental Health Code.

On September 26, 1996, the trial court granted the defendant's motion to dismiss. In explanation of its decision, the trial court stated:

> "The Court finds as to each count of Plaintiff's complaint that Plaintiff's causes of action are based on medical decisions and treatment rendered by the Defendant and, therefore, must be supported by a 2—622 affidavit."

In granting the motion to dismiss, the trial court gave the plaintiff 90 days in which to file an affidavit and report pursuant to section 2—622. After the plaintiff failed to file the affidavit and report within the required time, the defendant again moved to dismiss the complaint. On January 23, 1997, the trial court dismissed the plaintiff's complaint with prejudice. The plaintiff filed a timely notice of appeal.

On appeal, the plaintiff again argues that section 2—622 does not apply to her action because her complaint does not contain any allegations of medical negligence. Instead, the plaintiff argues that her complaint alleges that the defendant failed to comply with the mandatory provisions of the Mental Health Code. The plaintiff argues that the intended purpose of these provisions is to protect the rights of mental health patients and that the defendant's failure to comply with these requirements resulted in a violation of her rights.

■ The purpose of a section 2—619 motion to dismiss is to allow for the disposition of questions of law and easily proved fact issues at the outset of the case. *Wells v. Travis*, 284 Ill. App. 3d 282, 285 (1996). When reviewing the propriety of a section 2—619 dismissal, all well-pleaded facts alleged in the complaint are taken as true. *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 99 (1993). As such, the reviewing court is concerned solely with a question of law presented by the pleadings. *Nikolic*, 242 Ill. App. 3d at 99. The reviewing court may conduct an independent review of the propriety of dismissing the complaint and the standard of review is *de novo*. *Wells*, 284 Ill. App. 3d at 285.

■ Section 2—622(a) of the Code requires the plaintiff's attorney to file an affidavit and a reviewing health professional's report in any action in which "the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2—622(a) (West 1996). The question of whether the plaintiff's complaint requires a section 2—622(a) affidavit is therefore answered by determining whether, after accepting the plaintiff's allegations as true, the damages the plaintiff seeks to recover were caused by the defendant's "malpractice." See 735 ILCS 5/2—622(a) (West 1996).

We are guided in this determination by *Cohen v. Smith*, 269 Ill. App. 3d 1087 (1995). In *Cohen*, a patient and her husband sued a hospital and a male nurse alleging battery, intentional infliction of emotional distress, and violation of the Right of Conscience Act (745 ILCS 70/1 *et seq.* (West 1996)). *Cohen*, 269 Ill. App. 3d at 1089. The plaintiffs' claims were based on the defendants' failure to honor the patient's religious beliefs prohibiting her from being seen unclothed by a male. *Cohen*, 269 Ill. App. 3d at 1088-89. The trial court dismissed the plaintiffs' complaint for failing to comply with section 2—622. *Cohen*, 269 Ill. App. 3d at 1089.

■ The appellate court reversed, holding that the complaint was not predicated upon healing art malpractice. *Cohen*, 269 Ill. App. 3d at 1093. In reaching this conclusion, the court explained that malpractice is defined as:

" 'Professional misconduct or unreasonable lack of skill. ***

Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them.'" *Cohen*, 269 Ill. App. 3d at 1090, quoting Black's Law Dictionary 959 (6th ed. 1990).

The court noted that the essence of the plaintiffs' complaint was not that the defendants performed a medical procedure incorrectly or deviated from an appropriate medical standard but, rather, that the nurse violated the patient's privacy interests and religious standards by observing and touching her without consent. *Cohen*, 269 Ill. App. 3d at 1092. The court further noted that "[t]he only reason there is some hesitancy over the issue of whether a battery occurred in this case is because the contact took place in a hospital between a medical professional and a patient." *Cohen*, 269 Ill. App. 3d at 1092. The court explained that "it is not the plaintiffs who are seeking damages because of healing art malpractice; it is the defendants who are raising a defense based on their positions in the healing art fields." *Cohen*, 269 Ill. App. 3d at 1093. Since the nature of a plaintiff's claim determines whether section 2—622 is implicated, the court concluded that section 2—622 did not apply and that the plaintiffs' complaint should not have been dismissed. *Cohen*, 269 Ill. App. 3d at 1093.

■ We believe that similar considerations govern the disposition of this action. Here, the plaintiff alleges that the defendant injured her by violating certain sections of the Mental Health Code. In particular, she alleges that the defendant violated the Mental Health Code by (1) not placing his seclusion and restraint orders in writing; and (2) by restraining her as punishment, discipline, and for the convenience of the staff. The essence of the plaintiff's complaint arises out of the defendant's violation of these statutory violations, as opposed to any deviation from the applicable standard of medical care. See *Cohen*, 269 Ill. App. 3d at 1092. The counts of the plaintiff's complaint do not allege medical negligence, but are instead predicated upon false imprisonment, assault, battery, and infliction of emotional distress. The plaintiff alleges that, by engaging in statutorily prohibited conduct, the defendant caused her to be touched and confined without her consent and without legal authority.

The defendant contends that section 2—622 applies to the plaintiff's complaint because the allegations challenge the level of professional skill or judgment exercised by the defendant. To support this argument, the defendant relies upon *Kus v. Sherman Hospital*, 204 Ill. App. 3d 66 (1990), and *Kolanowski v. Illinois Valley Com-*

*munity Hospital*, 188 Ill. App. 3d 821 (1989). Our reading of these cases, however, does not support the defendant's position.

In *Kus*, the plaintiff alleged that his doctor had acted improperly by treating the plaintiff with an experimental device that had lost its governmental approval. *Kus*, 204 Ill. App. 3d at 72. This court held that the action was predicated upon healing art malpractice because the defendant physician was required to exercise his professional judgment in order to determine whether the plaintiff's condition necessitated the use of an experimental device that no longer had governmental approval. *Kus*, 204 Ill. App. 3d at 72. Unlike the instant case, however, there was no specific statutory prohibition which prevented the doctor in *Kus* from treating the plaintiff in such a manner.

In *Kolanowski*, the plaintiff was injured when he fell from a bed in the defendant's respite care program. *Kolanowski*, 188 Ill. App. 3d at 822. The plaintiff alleged that his injuries resulted from the defendant's failure to adequately supervise and restrain him. *Kolanowski*, 188 Ill. App. 3d at 822. The reviewing court determined that the plaintiff was required to file a section 2—622 affidavit because the complaint sounded in medical malpractice. *Kolanowski*, 188 Ill. App. 3d at 825. Specifically, the court noted that the exercise of medical judgment had been required in order to diagnose the plaintiff's medical condition and to determine the proper levels of supervision and restraint. *Kolanowski*, 188 Ill. App. 3d at 825. Once again, as in *Kus*, there were no specific statutory enactments that required that the defendant provide a certain level of care.

Clearly the situations in both *Kus* and *Kolanowski* required the exercise of medical judgment in order to determine the most appropriate course of treatment. In the instant case, however, the defendant was not at liberty to exercise his own medical judgment. Instead, he was obligated to observe the specific requirements codified by the legislature as to the appropriate manner and use of restraints and seclusion as medical treatments. Regardless of whether the defendant's treatment was medically appropriate, it was nonetheless prohibited under the Mental Health Code.

We therefore agree with the plaintiff that the question of whether the defendant violated the provisions of the Mental Health Code does not require a determination of whether the defendant properly exercised his medical judgment. See *Cohen*, 269 Ill. App. 3d at 1092. As the plaintiff has not alleged that the defendant improperly exercised his professional skill, we conclude that the plaintiff's complaint is not subject to the requirements of section 2—622 and that the trial court erred in dismissing the plaintiff's complaint on that basis.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed and the cause is remanded for further proceedings consistent with the opinion.

Reversed and remanded.

RATHJE, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent. I believe that plaintiff's complaint is based on allegations of medical malpractice and must therefore be accompanied by a health care professional's report pursuant to section 2—622(a) of the Code of Civil Procedure (735 ILCS 5/2—622(a) (West 1996)). Because plaintiff failed to provide such a report, the trial court properly dismissed her complaint. See 735 ILCS 5/2—619, 2—622(g) (West 1996).

In count V of her complaint, plaintiff alleges that defendant "had a duty to exercise ordinary care in delivering health care services *** due to the doctor-patient relationship that existed between Defendant and Plaintiff." Plaintiff then alleges that defendant was "guilty of negligent infliction of emotional distress by failing to exercise ordinary care" in secluding and restraining her. Such allegations present a textbook example of a medical malpractice complaint. As the majority notes, a medical professional commits malpractice when the facts demonstrate that he failed to exercise an appropriate amount of skill and care during treatment. See *Lyon v. Hasbro Industries, Inc.*, 156 Ill. App. 3d 649, 653 (1987). When the facts are viewed in the light most favorable to the plaintiff, count V directly challenges defendant's use of reasonable care during his treatment of her. Accordingly, plaintiff had to attach a section 2—622 certificate from a health care professional averring that she had a reasonable and meritorious cause of action. See 735 ILCS 5/2—622(a)(1) (West 1996). In the absence of this certificate, the trial court properly dismissed plaintiff's complaint.

Moreover, the remaining counts of plaintiff's complaint are inextricably entwined with the fact that plaintiff received medical treatment at the time she alleges defendant committed various intentional torts. According to her complaint, plaintiff was a patient in a mental health facility at the time of the alleged wrongdoing. Plaintiff refused to accept her "new treatment plan." In an effort to implement this treatment plan, defendant ordered plaintiff to be secluded. Later, defendant ordered her to be restrained after she engaged in a verbal altercation with staff members. Thus, it is appar-

ent that plaintiff was receiving medical treatment at the time of the seclusion and restraint. All of defendant's alleged actions occurred while he was treating plaintiff. It therefore follows that allegations regarding defendant's behavior challenge his professional medical decisions to seclude and restrain plaintiff. Her alleged injuries stem directly from defendant's care and treatment decisions. Her intentional tort claims are nothing more than malpractice claims. As such, plaintiff was bound to file a section 2—622 affidavit. See *Tucker v. St. James Hospital*, 279 Ill. App. 3d 696, 702 (1996).

The purpose of section 2—622 is to reduce the number of frivolous suits against health care providers and to terminate such suits before the cost of litigation increases substantially. *Tucker*, 279 Ill. App. 3d at 702. Under the majority's rule, however, mental health patients may now bring medical malpractice actions under the guise of intentional tort claims without regard to whether those actions would be certified as reasonable and meritorious by health care professionals. This result is particularly troublesome in the area of mental health care because such care so often involves physical interaction, including seclusion and restraint, between doctors and patients who are often likely to be confrontational and irrational because of serious mental problems. The constant threat of physical interaction is recognized in the duty of doctors to use restraint in order to prevent a patient "from causing harm to himself or physical abuse to others." 405 ILCS 5/2—108 (West 1996).

Thus, mental health care professionals are caught in an impossible situation: if a doctor physically restrains a patient, he is now subject to common-law intentional tort actions without the protection of section 2—622. If, on the other hand, he chooses not to restrain a patient and that patient causes harm to herself or another, the doctor is then liable for failing to restrain the patient. In the complete absence of any legislative direction providing for this result, I am unwilling to allow a patient like plaintiff in this case to proceed in complete derogation of section 2—622 when it is so apparent that her claim sounds in medical malpractice.

Accordingly, I dissent.