JAMES McCORMICK, Plaintiff-Appellant, v. V.S. UPPULURI, Defendant-Appellee.

First District (1st Division)   No. 1—92—1489

Opinion filed July 12, 1993.—Rehearing denied August 17, 1993.

Thomas L. Trinley, of Chicago, for appellant.

Ruff, Weidenaar & Reidy, Ltd., of Chicago (Douglas C. Rose, Paula M. Carstensen, and John J. Reidy, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff James McCormick appeals from a final order of the circuit court of Cook County which granted defendant V.S. Uppuluri's motion for summary judgment. The sole issue on appeal is whether the circuit court properly found that plaintiff's suit was untimely as a matter of law under the two-year medical malpractice limitation provision of the Illinois Code of Civil Procedure (the Code) (see Ill. Rev. Stat. 1989, ch. 110, par. 13—212). We affirm.

On September 20, 1988, plaintiff filed the instant action against defendant. Plaintiff alleged negligence in defendant's treatment of a kidney obstruction during plaintiff's September 30 through October 13, 1984, admittance at Ingalls Memorial Hospital (Ingalls). Plaintiff alleged that defendant's negligence proximately caused his right kidney to become nonfunctional, which plaintiff had removed in March 1985.

Defendant denied the material allegations of plaintiff's complaint and asserted section 13—212 of the Code as an affirmative defense. Defendant subsequently moved for summary judgment based on this section of the Code. Defendant predicated his motion on the fact that plaintiff had filed on August 1, 1985, a similar medical malpractice action against Northwestern Memorial Hospital; nine doctors who practiced there; Ingalls; and Drs. Shaw and Lipschutz, who treated plaintiff while at Ingalls. Defendant was not named in this prior suit.

Like plaintiff's 1988 lawsuit, the 1985 action against Ingalls and Drs. Shaw and Lipschutz was predicated on plaintiff's September 30 through October 13, 1984, stay at Ingalls. Both actions alleged negligence and the loss of the same right kidney. Plaintiff voluntarily dismissed the 1985 action on May 14, 1987. It has not been refiled.

Defendant argued in his motion that plaintiff, at the latest, knew of his injury and that it was wrongfully caused on August 1, 1985, the date he filed the earlier lawsuit. Accordingly, plaintiff had two years from this date in which to sue defendant. Having not so instituted suit, plaintiff's 1988 action against defendant was time barred as a matter of law.

Defendant in his motion made the additional argument that the limitations clock began ticking against plaintiff even before he filed the 1985 action. Defendant asserted that shortly after having lost his kidney in March 1985, plaintiff knew or should have known that this loss was wrongfully caused. In his deposition, plaintiff testified

that, following the loss of his kidney, he believed that something had gone wrong with his treatment at Ingalls. Plaintiff testified that he made inquiries about this prior treatment to the doctor who removed his kidney. In the summer of 1985, plaintiff even consulted with an attorney and received his medical records from Ingalls. Defendant's name was included in these records. Plaintiff thereafter filed the 1985 action. Based on these facts, defendant asserted that the limitations clock began ticking on the date plaintiff's kidney was removed or shortly thereafter.

In his memorandum in opposition to defendant's motion for summary judgment, plaintiff asserted that a genuine issue of material fact existed on the issue of when he first learned, for limitation purposes, the fact that he had a cause of action against defendant. Plaintiff related the following facts in support of his claim.

In 1975, plaintiff became a quadriplegic and lost control of his bladder as a result of an automobile accident. Plaintiff is required to use a catheter at all times.

Following the accident, plaintiff received ongoing care at Northwestern Memorial Hospital. Plaintiff would submit a urine sample every six months. In 1981 and 1983, he was hospitalized at Northwestern to have bladder stones crushed. In December 1983, plaintiff was admitted a third time to Northwestern to have right kidney stones removed. Plaintiff testified that his kidneys functioned properly after his release. He was feeling pretty good.

On September 30, 1984, plaintiff was rushed to Ingalls and admitted there. A diagnosis of septic shock was made. He was released October 13, 1984.

On February 14, 1985, plaintiff was admitted to University of Chicago Hospitals, where it was determined that his right kidney was nonfunctioning. The kidney was removed during this hospitalization. In his deposition, plaintiff testified that his treating physician told him, in response to plaintiff's inquiry as to why he lost his kidney, that the kidney loss was from "a calcium build-up and these things occur." Plaintiff still believed, however, that something perhaps had gone wrong at Ingalls which he did not know about. Plaintiff thereafter filed the earlier suit on August 2, 1985.

Plaintiff was represented by at least two different attorneys in the 1985 lawsuit: Michael McArdle and Thomas Trinley. In November 1985, McArdle wrote plaintiff, informing him that he would have to withdraw. McArdle explained in this letter that, in his opinion, "there was no clear evidence of malpractice involved in the handling of Mr. McCormick's case, including acts or omissions at In-

galls Memorial Hospital by agents of that hospital or by staff physicians."

On February 16, 1987, Trinley filed his appearance in the 1985 lawsuit. Trinley thereafter filed a motion for a continuance or in the alternative a motion for voluntary dismissal. In this motion, Trinley explained that he was awaiting an expert medical evaluation of plaintiff's case. On May 14, 1987, the 1985 lawsuit was voluntarily dismissed without prejudice.

On June 26, 1987, Dr. Michael Floyd opined in a written opinion that defendant "departed from good and accepted practice by failing to deal with the obstruction of [plaintiff's] right kidney or make specific and urgent plans to do so." Trinley attached this opinion to the September 20, 1988, lawsuit he filed on plaintiff's behalf against defendant. In an affidavit, plaintiff asserted that "[t]his was the first time that he came into possession of the knowledge that his injuries had been wrongfully caused by the aforesaid defendant."

Based on the facts stated above, plaintiff asserted that he did not discover the existence of an action against defendant until he received the June 26, 1987, opinion of Dr. Floyd. Thus, asserts plaintiff, he had two years from this date to file his action against defendant. Plaintiff contends that the September 20, 1988, lawsuit complied with this time requirement, as well as section 13—212's requirement that his action be instituted within four years of the occurrence (plaintiff was discharged from Ingalls on October 13, 1984).

Defendant filed a reply to plaintiff's memorandum in opposition. In this reply, defendant attached as an exhibit McArdle's January 16, 1986, motion to withdraw from the 1985 lawsuit. In this motion, McArdle asserted that "[p]laintiff has a viable cause of action against the within named defendants and this matter should be continued to afford him an opportunity to prepare his case by appropriate representation." Defendant argued that this statement to the court directly contradicted McArdle's affidavit in which McArdle asserts he told plaintiff in November 1985 that "there was no clear evidence of malpractice."

Defendant also submitted in his reply copies of interrogatory answers filed by plaintiff in the 1985 action. In response to an Ingalls interrogatory, plaintiff identified on April 6, 1987, "the Medical Quality Foundation" and "Dr. Jacob" as "physician[s] who had informed the plaintiff *** that this defendant [Ingalls], by or through its employees or agents, negligently injured the plaintiff."

Defendant argued that this response undermined plaintiff's claim that McArdle and his doctors somehow misled him into believing that his injury was not wrongfully caused.

On April 1, 1992, the circuit court agreed that plaintiff's 1988 action was time barred as a matter of law. Plaintiff has pursued the instant appeal.

This case presents the issue of when plaintiff's cause of action accrued for purposes of section 13—212, which provides in relevant part:

> "[N]o action for damages for injury or death against any physician *** shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury ***, but in no event shall such action be brought more than 4 years after the date on which occurred the act *** alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1989, ch. 110, par. 13—212.

■ Under the "discovery rule" in medical malpractice cases, the statute of limitations begins to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.) The term "wrongfully caused" "does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action." (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976.) Rather, the term refers to the point in time when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College*, 88 Ill. 2d at 416.

■ In most cases, the question of when "an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused" is one of fact. (*Witherell*, 85 Ill. 2d at 156.) "Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court." *Witherell*, 85 Ill. 2d at 156.

To defeat summary judgment in this case, plaintiff in essence has advocated an interpretation of the discovery rule which has been expressly disavowed by our supreme court. This much is clear from plaintiff's affidavit. There, in reference to Dr. Floyd's June

26, 1987, report, plaintiff asserts: "This was the first time that he came into possession of the knowledge that his injuries had been wrongfully caused by the aforesaid defendant."

The supreme court has clearly indicated, however, that the running of the limitations clock is not postponed until the plaintiff first obtains knowledge of defendant's negligent conduct. Rather, and as noted, the limitations clock commences when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." (*Knox College*, 88 Ill. 2d at 416.) The reason for this rule was explained in *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 170-71, 421 N.E.2d 864:

"We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury *and the defendants' negligent conduct.* Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await legal determination. [Citation.] Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interest." (Emphasis added.)

In this case, we need not address when the running of the limitations clock first commenced. Rather, as a matter of law, it commenced on August 1, 1985, the date plaintiff filed his first lawsuit. Plaintiff must have had sufficient information concerning his injury and its cause for plaintiff to have instituted suit. Even if plaintiff did not, we must impute it to plaintiff. To hold otherwise in this case would make a mockery of the court system.

At the time plaintiff filed his suit, the medical affidavit requirement of section 2—622 of the Code had yet to take effect. That section became effective August 15, 1985. (*DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 588 N.E.2d 1139.) Despite the nonapplicability of section 2—622, the allegations of plaintiff's complaint were required to be supported by "reasonable cause." (See Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) We must assume that, at the time plaintiff filed his 1985 suit, "reasonable cause" existed to support the gravamen of the 1985 complaint, namely, that the named defendants had "wrongfully caused" the loss of his kidney. Under the supreme court's interpretation of the discovery rule, the knowledge which plaintiff in fact possessed upon filing the suit, or

the knowledge which we must impute to him due to the requirements of section 2—622, is sufficient to trigger the running of the limitations clock.

Significantly, this is not a case where defendant's identity was concealed. His identity was dislosed in Ingalls' medical records which plaintiff possessed prior to filing the 1985 action. Any reasonable discovery attempts should have included ascertaining defendant's involvement in this case. If discovery revealed defendant to be a potentially liable party, plaintiff had two years from August 1, 1985, to file an amended complaint naming defendant. Defendant, however, was not sued until September 20, 1988, over three years from the filing of the 1985 action. The suit against defendant, therefore, was untimely.

Interestingly, plaintiff urges June 26, 1987, as the date upon which he first learned that he possessed a cause of action against defendant. Had plaintiff acted promptly, defendant could have been timely named as a defendant prior to August 1, 1987. This court has been given no reason to explain why plaintiff waited until September 20, 1988, to so name defendant.

Plaintiff has argued many cases on appeal. However, no case involves a situation where two consecutive lawsuits were filed based on the same loss and same alleged negligent conduct. Plaintiff's cases are, therefore, factually distinguishable.

For the foregoing reasons, we affirm the April 1, 1992, order of the circuit court of Cook County granting defendant summary judgment based on section 13—212.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.