No. 2--95--0686

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

ELSIE WELLS, Indiv. and as         )  Appeal from the Circuit Court

Adm'r of the Estate of             )  of Kane County.

Robert Wells, Deceased,            )

                                   )

          Plaintiff-Appellant,     )  No. 93--L--0074 

                                   )

v.                                 )

                                   )

DOUGLAS TRAVIS and                 )

KARIM VALIKA,                      )  Honorable

                                   )  R. Peter Grometer,

          Defendants-Appellees.    )  Judge, Presiding.

_________________________________________________________________

     JUSTICE DOYLE delivered the opinion of the court:

     This case examines the question of when plaintiff received

sufficient information under the discovery rule to trigger the

running of the limitations period in a medical malpractice action.

     On February 3, 1993, plaintiff, Elsie Wells, special

administrator of the estate of Robert G. Wells (decedent), sued

defendant, Douglas Travis, M.D. (Travis), alleging a cause of

action for medical negligence for failure to diagnose and treat

diabetes mellitus that resulted in decedent's death.  On January

19, 1995, plaintiff filed a first amended complaint adding

defendant Karim Valika, M.D. (Valika).  Counts IV, V, and VI of

plaintiff's amended complaint alleged causes of action under the

Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 1994)), the

family expense statute (750 ILCS 65/15 (West 1994)), and the

Survival Act (755 ILCS 5/27--6 (West 1994)), respectively.  Valika

filed a motion to dismiss with prejudice pursuant to section 2--

619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2--

619(a)(5) (West 1994)), asserting that the allegations listed in

the amended complaint were time-barred by the two-year statute of

limitations applicable to medical negligence causes of action (see

735 ILCS 5/13--212(a) (West 1994)).  The trial court granted

Valika's motion to dismiss with prejudice.  This appeal followed.

     Plaintiff contends the trial court erred as a matter of law in

granting Valika's section 2--619(a)(5) motion.  

     Plaintiff's suit arose from the death of the decedent on

February 10, 1991.  On February 7, 1991, decedent was admitted to

Sherman Hospital after a referral from his family physician,

Travis.  Travis requested a consultation by Valika and on February

8, 1991, Valika diagnosed decedent as suffering from newly

discovered diabetes mellitus with a hypersmolar condition and

severe hyperglycemia.  Decedent died on February 10, 1991, from

multiple complications.

     On February 3, 1993, plaintiff filed suit against Travis,

asserting he had been medically negligent in failing to diagnose

and treat decedent's diabetes mellitus.  The complaint alleged that

decedent "was caused to die due to complications resulting from

undiagnosed and untreated diabetes mellitus."  Plaintiff's attorney

filed a section 2--622 affidavit on February 3, 1993, and a written

health professional's report by Robert Lindemann, M.D., on June 28,

1993.  See 735 ILCS 5/2--622(a)(1) (West 1994).  The report

indicated Lindemann had reviewed decedent's treatment records "from

1983 through the time of his death, including his stay in *** [the]

[h]ospital."  The record contains an August 21, 1992, report by

Lindemann to his employer, Saprano, Inc., criticizing departures

from good medical care by Travis.  In this report Lindemann stated

he "did not feel there was any malpractice involved in [decedent's]

care once he was admitted to the hospital since he developed

complications that can occur despite the best of treatment."  As

her only response to Rule 220 interrogatories questioning the date

plaintiff first learned of Lindemann's opinions, plaintiff attached

Lindemann's August 21, 1992, report.

     In depositions, Travis' defense experts, William Hulesch,

M.D., and David Baldwin, M.D., each criticized the medical care

rendered by Valika.  The depositions of Hulesch and Baldwin were

taken on December 22, 1994, and December 28, 1994, respectively. 

In their depositions, both witnesses stated: (1) Valika mismanaged

the decedent's care; (2) Valika deviated from the acceptable

standard of care; and (3) decedent would have survived if Valika

had treated decedent correctly.

     Following the discovery depositions of Hulesch and Baldwin,

plaintiff filed a motion for leave to file an amended complaint. 

The motion was granted and the amended complaint, adding Valika as

a defendant, was filed on January 19, 1995.  Plaintiff alleged in

her amended complaint that the dates of the Hulesch and Baldwin

depositions were the "first dates" plaintiff knew or reasonably

should have known that Valika "wrongfully caused" decedent's death.

     We turn first to the nature of appellate review of a trial

court's dismissal of a complaint pursuant to section 2--619.  The

purpose of section 2--619 is to allow for the disposition of

questions of law and easily proved fact issues at the outset of the

case.  See, e.g., Zedella v. Gibson, 165 Ill. 2d 181, 185 (1995). 

Unlike a motion with respect to the pleadings brought under section

2--615 (Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 484

(1994)(section 2--615 motion attacks only the legal sufficiency of

the complaint and deals exclusively with defects appearing on the

face of the complaint)), a trial court ruling on a section 2--619

motion may consider the "pleadings, depositions, and affidavits"

(Zedella, 165 Ill. 2d at 185).  We have stated:

     "The motion should be granted and the complaint dismissed if,

     after construing the document in the light most favorable to

     the nonmoving party, the court finds that no set of facts can

     be proved which would entitle the plaintiff to recover. 

     [Citations.]  When reviewing the propriety of a section 2--619

     dismissal, all well-pleaded facts alleged in the complaint are

     taken as true.  [Citation.]  Conclusions of law or conclusions

     of material fact unsupported by specific factual allegations

     must be disregarded.  [Citation.]  As such, the reviewing

     court is concerned solely with a question of law presented by

     the pleadings."  Nikolic v. Seidenberg, 242 Ill. App. 3d 96,

     98-99 (1993).

Finally, an appellate court conducts an independent review of the

propriety of dismissing the complaint and, therefore, is not

required to defer to a trial court's reasoning.  Nikolic, 242 Ill.

App. 3d at 99.

     The issue here is whether the trial court erred as a matter of

law in granting Valika's section 2--619(a)(5) motion.  Parties

claiming medical negligence must file their complaint within two

years of "the date on which the claimant knew, or through the use

of reasonable diligence should have known, *** of the existence of

the injury or death for which damages are sought in the action." 

735 ILCS 5/13--212(a) (West 1994).  Our supreme court has stated

that "[t]he statute starts to run when a person knows or reasonably

should know of his injury and also knows or reasonably should know

that it was wrongfully caused."  Witherell v. Weimer, 85 Ill. 2d

146, 156 (1981)(discussing the operation of the discovery rule in

medical negligence cases).  When this occurs, the injured person is

obligated to inquire further as to the existence of a cause of

action.  Witherell, 85 Ill. 2d at 156.  The court may determine--as

a matter of law--when the injured party knew or reasonably should

have known both of the injury and that it was wrongfully caused,

only in those situations in which the undisputed facts lead to a

single conclusion.  Witherell, 85 Ill. 2d at 156.  In most cases

though, this is a disputed question for the fact finder.  Knox

College v. Celotex Corp., 88 Ill. 2d 407, 416 (1981).  As a matter

of law, the latest date the statute of limitations contained in

section 13--212(a) can commence is the date the plaintiff files the

initial lawsuit.  McCormick v. Uppuluri, 250 Ill. App. 3d 386, 391

(1993).  However, the McCormick rule may not apply when a plaintiff

fails to discover that a particular defendant wrongfully caused a

decedent's death because of the defendant's misstatement,

concealment, or fraud.  See Neade v. Engel, 277 Ill. App. 3d 1004,

1005-06, 1009  (1996).

     In the present case, plaintiff argues that she had no

information implicating Valika in the alleged malpractice until the

depositions of Travis' experts in December 1994.  Plaintiff

contends that there was no reason for her to have known earlier of

her claim against Valika, particularly in view of the report of

plaintiff's expert, Lindemann, who expressly exonerated personnel

treating decedent in the hospital, including Valika.  Applying the

discovery rule of section 13--212, plaintiff asserts that her first

amended complaint against Valika was timely filed on January 19,

1995, within two years of the December 1994, depositions of Travis'

experts.                     

     Defendant contends that the trial court correctly determined

that the two-year discovery rule was triggered as a matter of law

on August 21, 1992, when plaintiff became aware of Lindemann's

report implicating Travis as deviating from the acceptable standard

of care in his diagnosis and treatment of decedent.  Defendant

argues that because the first amended complaint, first naming

defendant, was filed more than two years after August 21, 1992,

plaintiff's action against defendant was time-barred pursuant to

section 13--212.  We agree.  

     The essence of plaintiff's position is that a person is not

charged with knowledge sufficient to trigger the running of the

limitations period as to any particular defendant until the person

knows or reasonably should know that the injury was wrongfully

caused by the negligence of that defendant.  The supreme court has

expressly disavowed any such interpretation of the discovery rule,

holding, instead, that the statute of limitations begins to run

when "the injured person becomes possessed of sufficient

information concerning his injury and its cause to put a reasonable

person on inquiry to determine whether actionable conduct is

involved."  Knox College, 88 Ill. 2d at 416.  At that point the

burden is upon the person to inquire further as to the existence of

a cause of action.  Witherell, 85 Ill. 2d  at 156.  The supreme

court has explained the reason for this rule as follows:

          "We wish to emphasize that the rule we announce is not

       the same as a rule which states that a cause of action

       accrues when a person knows or should know of both the

       injury and the defendants' negligent conduct.  Not only is

       such a standard beyond the comprehension of the ordinary lay

       person to recognize, but it assumes a conclusion which must

       properly await legal determination. [Citation.]  Moreover,

       if knowledge of negligent conduct were the standard, a party

       could wait to bring an action far beyond a reasonable time

       when sufficient notice has been received of a possible

       invasion of one's legally protected interest." (Emphasis

       added.) Nolan v. Johns-Manville Asbestos, 85 Ill. 2d 161,

       170-71 (1981).  

          Knowledge that an injury has been "wrongfully caused" does not

mean knowledge of a specific defendant's negligent conduct. 

Saunders v. Klungboonkrong, 150 Ill. App. 3d 56, 59 (1986);  Bates

v. Little Co. of Mary Hospital, 108 Ill. App. 3d 137, 140 (1982). 

We believe that the rejection of this fundamental principle, as

urged by plaintiff and advocated by the dissenting justice, would

represent an unwarranted departure from existing precedent.

     The injury complained of in this case is the death of

decedent.  It is evident that plaintiff had reason to know of the

death and that actionable conduct might be involved when plaintiff

received the August 21, 1992, report of Lindemann implicating

Travis and, after reviewing records of decedent's hospital

treatment, exculpating Valika as a negligent party.  As a matter of

law, therefore, the limitations period commenced on that date. 

Because plaintiff's knowledge of the contents of Lindemann's August

21, 1992, report was undisputed, no relevant issue of fact was

presented.  

     This reasoning is directly followed in McCormick v. Uppuluri,

250 Ill. App. 3d 386.  In that case, the plaintiff alleged that the

defendant-physician negligently treated him for a kidney ailment

during the plaintiff's stay in a hospital.  The defendant asserted

the section 13--212 statute of limitations as an affirmative

defense and moved for summary judgment on that issue.  The

defendant predicated his motion on the fact that the plaintiff had

filed a previous action against several other physicians for the

same injury, which action was voluntarily dismissed.  The defendant

argued in his motion for summary judgment that the plaintiff, at

the latest, must have known of his injury and that it was

wrongfully caused when he filed the earlier lawsuit against other

physicians.  Because the plaintiff did not file suit against the

defendant within two years of that date, the defendant argued that

the action was time-barred as a matter of law.  

     The plaintiff in McCormick asserted that a genuine issue of

material fact existed on the issue of when he first learned, for

limitations purposes, that he had a cause of action against the

defendant.  The plaintiff explained that, following his voluntary

dismissal of the previous suit, he received a written expert

opinion stating that the defendant deviated from the acceptable

standard of care.   The plaintiff submitted  an affidavit asserting

that " '[t]his was the first time that he came into possession of

the knowledge that his injuries had been wrongfully caused by the

aforesaid defendant.' " 250 Ill. App. 3d at 389.  The plaintiff

argued, therefore, that he had two years from this date to file his

action against the defendant.           

     In affirming the entry of summary judgment for the defendant,

the appellate court rejected the plaintiff's contention.  Citing

Knox College and Nolan, the court held that "the running of the

limitations clock is not postponed until the plaintiff first

obtains knowledge of defendant's negligent conduct.  Rather, and as

noted, the limitations clock commences when 'the injured person

becomes possessed of sufficient information concerning his injury

to determine whether actionable conduct is involved.' "  McCormick,

250 Ill. App. 3d at 391, quoting Knox College, 88 Ill. 2d at 416. 

The court held that the plaintiff's filing of the previous lawsuit

against other physicians established as a matter of law that the

plaintiff had sufficient information concerning his injury and its

cause to trigger the limitations period.  Even if the plaintiff did

not have such actual knowledge, the court held that it must be

imputed to him.  McCormick, 250 Ill. App. 3d at 391.   

     Similarly, in the present case, plaintiff cannot be heard to

argue that she did not possess sufficient knowledge on August 21,

1992, concerning the death and its cause to put a reasonable person

on inquiry to determine whether actionable conduct was involved,

when it is undisputed that she was in possession of the report of

her own expert concluding that the conduct of Travis departed from

acceptable medical standards.  If the requisite knowledge of facts

triggering a duty to investigate must be presumed from the filing

of a malpractice claim against other defendants, it follows that

such knowledge must also be presumed from plaintiff's awareness of

her consultant expert's report criticizing departures from the

proper standard of medical care, regardless of whom the expert

identified as a responsible party.  The plaintiff had two years

from the date of her expert's report to conduct her inquiry to

determine whether, and against whom, a lawsuit could be filed.  If

plaintiff was unsatisfied that Lindemann had correctly identified

all persons responsible for the alleged malpractice, she had two

years to conduct further inquiry or to consult any other expert. 

     Even before the supreme court addressed this issue in Nolan,

the same issue had been considered and resolved by this court in

Guebard v. Jabaay, 65 Ill. App. 3d 255 (1978).  There, the

plaintiff timely filed a medical malpractice action against other

defendants but claimed to have not discovered that Dr. Angell had

performed one of the surgeries on her knee until this information

emerged during the plaintiff's deposition of one of the original

defendants.  The plaintiff argued that, because she filed an

amended complaint adding a claim against Angell within two years of

this discovery of his involvement, the trial court erred in

dismissing her complaint against Angell as time-barred by the

statute of limitations.  This court rejected the plaintiff's

interpretation of the discovery rule, commenting as follows:

          "Plaintiff's contention in the present case would

       extend the discovery rule as applied to medical malpractice

       cases to mean that the cause of action accrues when the

       person injured learns, or reasonably should have learned, of

       the identity of the person responsible for his injury, even

       though he earlier knew of the injury itself.  We are not

       aware of any case in which the discovery rule has been so

       extended or applied and we are not convinced that the logic

       of the rule warrants such an extension by us.  [Citation.] 

       In applying the discovery rule the court will balance the

       hardship on the plaintiff caused by the bar of his suit

       against the increased burden of a defendant to obtain proof

       of his defense after the passage of time.  [Citations.]  The

       hardship imposed upon a party who is unaware he has an

       actionable injury until after the limitations period has run

       is much more severe than that imposed upon a party who

       knows, or reasonably should know, he has suffered an

       actionable injury but does not learn the identity of the

       person who injured him until after the limitations period

       has passed.  The former is in no position to take advantage

       of the limitations period in which to determine the identity

       of the party injuring him.  The latter, however, knows he

       has a cause of action, has the time given by the limitations

       period to attempt to learn the identity of the person who

       injured him and is not in the position of being barred

       before ever knowing of his right to sue.  (Emphasis in

       original.)  65 Ill. App. 3d at 258-59.

          Plaintiff argues that the nature of decedent's death was such

that it failed to signal any actionable wrongdoing.  However, this

argument is wholly irrelevant to the basis of our decision, i.e.,

that, subsequent to the death, plaintiff was placed on inquiry of

actionable conduct based upon the August 21, 1992, report of

Lindemann, thereby triggering the running of the limitations

period.        

     Plaintiff relies on Arndt v. Resurrection Hospital, 163 Ill.

App. 3d 209 (1987), for the proposition that, under the discovery

rule, the limitations period is not triggered as to any particular

defendant until the plaintiff has reason to know that the injury

was wrongfully caused by the negligence of that defendant.  A

careful reading of Arndt, however, reveals that it does not stand

for plaintiff's proposition.  

     In Arndt, the plaintiff's decedent died in a hospital on

January 18, 1983.  On December 21, 1984, the plaintiff sued the

hospital for malpractice and designated the defendant-physician as

a respondent in discovery.  On September 18, 1985, the plaintiff

filed suit against the defendant.  In a subsequent amended

complaint, the plaintiff alleged that she did not learn of the

defendant's negligence until his discovery deposition was taken on

May 14, 1985.  In view of the fact that the plaintiff was at her

husband's bedside and knew when he died, the trial court determined

that the plaintiff failed to file suit against the defendant until

more than two years after the death.  The trial court, therefore,

dismissed the action as time-barred, refusing to recognize that the

discovery rule could postpone the beginning of the limitations

period beyond the date of death.  

     The appellate court reversed, concluding, consistent with case

law cited herein, that the limitations clock did not begin to tick

until the plaintiff had reason to know both of the death and that

the death was wrongfully caused.  The appellate court

understandably focused upon the May 14, 1985, deposition, in which

the defendant's negligence was discovered, as being the date the

plaintiff first had reason to know of wrongful causation.  The

defendant did not argue, as was argued in McCormick, that the

plaintiff was aware of wrongful causation no later than the date of

her December 21, 1984, lawsuit against the hospital.  Indeed, any

such argument would have been futile considering that the plaintiff

had filed suit against the defendant well within two years of her

suit against the hospital.  Therefore, the only relevant date

proposed for extending the commencement of the limitations period

beyond the date of death was the date of plaintiff's discovering

the defendant's negligence, which was accepted by the appellate

court as tantamount to discovery of wrongful causation.  

     Unlike McCormick (previous filing of suit against other

defendants triggered statute) and the present case (statute

triggered by report of plaintiff's expert), no event earlier than

the date of the plaintiff's learning facts of the defendant's

negligence was argued to the Arndt court as imparting knowledge of

wrongful causation.  Consequently, the discovery of wrongful

causation was regarded by the court as coinciding with the

discovery of the defendant's negligence.  In view of the parties'

positions, it was unnecessary for the court to look further as

there was no issue of whether under different circumstances, as

here, these events could occur separately, thereby producing a

different outcome.  Accordingly, despite excerpts quoted by

plaintiff from the decision, we do not read Arndt as supporting

plaintiff's proposition that knowledge of wrongful causation cannot

be acquired in advance of plaintiff's having reason to know of the

negligence of a particular defendant.  We note that the same

appellate district, in McCormick, later expressly rejected any such

proposition.  McCormick, 250 Ill. App. 3d at 391.

     Plaintiff further argues that an exception to the well-

established principles enunciated in Nolan, McCormick, and Guebard

is warranted here because plaintiff's compliance with the health

professional certification requirements of section 2--622 resulted

in her development of information negating the existence of a cause

of action against Valika.  In essence, plaintiff contends that she

was lulled into foregoing any potential investigation of Valika's

conduct by the misleading report of her consultant, Lindemann, who

exonerated any person treating decedent after his admission to the

hospital.

     The appellate court considered a similar argument in Beasley

v. Abusief, 146 Ill. App. 3d 54 (1986).  In that case, the

plaintiff's first section 2--622 consultant filed a report

exonerating the defendant-surgeon of malpractice.  Approximately 10

months later, a second consultant rendered an opinion concluding

that the defendant had been negligent in the surgery.  After

hearing evidence, the trial court found in favor of the defendant

on his limitations defense.  On appeal, the plaintiff argued that

the trial court erred in not directing a verdict in the plaintiff's

favor on this issue.  The plaintiff contended that her first

consultant's opinion, which negated a cause of action, should have

been considered as tolling the two-year limitations period until

the plaintiff received the second consultant's section 2--622

certification of negligence.  Plaintiff asserted that, in the face

of the initial opinion, she could not have filed an action against

the defendant in good faith until she received a contrary opinion.

     The appellate court recognized the dilemma confronting a

person in plaintiff's position but rejected the notion that a

consultant's opinion negating negligence could be used to toll the

plaintiff's allotted two-year period for identifying responsible

parties.  The court reasoned:

       "Holding that the limitation period is not triggered until

       a prospective malpractice plaintiff secures an expert

       witness qualified to testify to the described necessary

       elements for a prima facie case would clearly extend the

       limitation period unduly and leave the four-year period of

       section 13--212, after which a defendant has absolute

       repose, as the only substantial protection that such a

       defendant would have against stale claims.

          ***  Moreover, recognizing that professionals are

       reluctant to be critical of their brethren, we would be

       apprehensive that a medical opinion detrimental to a cause

       of action for malpractice is likely to exist in a large

       number of cases.  The [tolling] rule requested by plaintiffs

       would be likely to create almost as serious a problem as

       would a rule that the limitation period does not begin to

       run until a favorable medical opinion is available."  146

       Ill. App. 3d at 60.

          In view of established precedent, we will not create an

exception to the statute of limitations because plaintiff elected

to rely on the opinion of her chosen expert rather than continuing

her investigation.  This court has recognized an exception to the

statute when there is evidence that a defendant has acted to

conceal evidence of his liability.  Neade, 277 Ill. App. 3d 1004. 

The record of the present case discloses no facts which could

invoke this exception.  If evidence of fraud or concealment

existed, it was plaintiff's burden to present it in opposition to

defendant's section 2--619 motion.  

     For the foregoing reasons, the judgment of the circuit court

of Kane County is affirmed.

     Affirmed.

     THOMAS, J., concurs.

     JUSTICE HUTCHINSON, dissenting:

     The majority concludes plaintiff would not be able to prove

any set of facts demonstrating that her amended complaint against

Valika was timely under section 13--212 of the Code (735 ILCS 5/13-

-212 (West 1994)).  I freely admit that upon remand plaintiff

probably would not be able to demonstrate her amended complaint was

timely.  In terms of the ultimate result in the present case, there

is scant difference between my position and that of the majority. 

However, the gulf of our disagreement and its ramifications for

injured persons in future medical negligence cases are immense.  In

its affirmance of the trial court's grant of summary judgment--

despite the fact the trial court itself apparently failed to

determine the date on which the statute of limitations ran--the

majority creates the potential that plaintiffs will inequitably be

denied the possibility of redress despite the reasonableness of the

manner in which they inquire into the wrongful cause of injury or

death.   Therefore, I respectfully dissent.

     My disagreement with the majority turns on our differing views

of the interaction between section 2--622 of the Code (735 ILCS

5/2--622 (West 1994)) and the discovery rule announced by the

Illinois Supreme Court in Witherell v. Weimer, 85 Ill. 2d 146

(1981).  In Witherell our supreme court stated the statute of

limitations in medical negligence actions "starts to run when a

person knows or reasonably should know of his injury and also knows

or reasonably should know that it was wrongfully caused." 

(Emphasis added.)  Witherell, 85 Ill. 2d at 156.  Assuming that an

injured person knows or reasonably should know of his injury, the

emphasized portion of this quotation sets forth two triggers that

commence the statute of limitations: (1) actual knowledge that the

injury was wrongfully caused; or (2) information and/or

circumstances that would put a reasonable person on notice, i.e.,

constructive notice, that the injury was wrongfully caused.  

     I believe that the majority's application of section 2--622

precludes any examination of reasonableness.  This is contrary to

the above-quoted language from Witherell and section 13--212 of the

Code (see 735 ILCS 5/13--212 (West 1994)(medical negligence action

must be brought within two years "after the date on which the

claimant knew, or through the use of reasonable diligence should

have known *** of the injury or death")).  The majority states

"[b]ecause plaintiff's knowledge of the contents of Lindemann's

August 21, 1992, report was undisputed, no relevant issue of fact

was presented."  Slip op. at 8.  Therefore, the majority apparently

believes the mere fact that a section 2--622 investigation has been

conducted is sufficient to put any and all injured persons on

constructive notice under almost all possible circumstances.  Such

a per se rule forecloses--once a section 2--622 report and

affidavit are filed--any examination of the reasonableness or

unreasonableness of an injured party's assertion that they did not

know their injury was wrongfully caused.

     I respectfully submit that a section 2--622 investigation

should not serve as a substitute for making a factual determination

whether an injured party reasonably should have known his injury

was wrongfully caused.  There is nothing magical about a section 2-

-622 investigation.  Its validity, accuracy, and comprehensiveness

may be affected by numerous factors completely beyond the control

of the injured party.  Among these factors are (1) the misconduct

by defendants delaying the discovery of the wrongful cause of

injury or death (see Neade v. Engel, 277 Ill. App. 3d 1004, 1005-

06, 1009  (1996) (holding that the statute of limitations did not

commence--despite the filing of a prior complaint against another

physician--until the defendant's deposition made the plaintiff

aware of the defendant's involvement in the decedent's death, where

the plaintiff failed to discover the defendant's involvement

because of the defendant's misstatement, concealment, or fraud));

(2) the negligent maintenance or preparation of the medical record

by defendants or their employees or agents (see Steinberg v.

Dunseth, 276 Ill. App. 3d 1038, 1049 (1995)(stating that a "worst

case situation, medical records personnel might be involved in a

cover-up" (emphasis added) thereby implying such personnel might

also innocently fail to provide the section 2--622 expert with all

incriminating records); (3) the causal connection between the

potential defendant's conduct and the injury or death is so complex

it might be reasonable for a section 2--622 expert to fail to

identify a potential defendant; and (4) the negligence of the

section 2--622 reviewing health professional.   In terms of the

fourth factor, I highlight the legislature's decision to make

section 2--622 health professionals immune from civil liability,

provided they prepare their reports in good faith.  735 ILCS 5/2--

622(f) (West 1994).  Therefore, it is all the more inequitable and

unjust to make an injured person bear the consequences of such an

expert's failure.  I would be more circumspect than the majority in

applying section 2--622.

     All the above factors present valid potential factual problems

with a section 2--622 investigation that might render reasonable an

injured person's failure to continue to inquire and learn a

defendant's conduct was a wrongful cause of injury or death.  I

would not close off consideration of these factors by way of a per

se rule.  

     The majority makes the commencement of the statute of

limitations a question of law.  The only question of fact would be

the date on which the investigation was completed.  Our supreme

court has stated that the commencement of the statute of

limitations in medical negligence cases is "[i]n many, if not most,

cases *** a disputed question to be resolved by the finder of

fact."  Witherell, 85 Ill. 2d at 156; see also, e.g., Jackson

Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill. 2d 240, 250

(1994)(rule applied in legal negligence cause).  This longstanding

and often announced rule should not be abandoned on the basis of an

unintended interaction among section 13--212(a), section 2--622,

and the discovery rule.  This is buttressed by the fact section 2--

622 is a pleading requirement designed to limit frivolous lawsuits;

it is not a substantive defense designed to preempt an injured

person's day in court.  See McCastle v. Sheinkop, 121 Ill. 2d 188,

193 (1987); Steinberg, 276 Ill. App. 3d at 1042; Miller v. Gupta,

275 Ill. App. 3d 539, 543 (1995); Moscardini v. Neurosurg, S.C.,

269 Ill. App. 3d 329, 334-35 (1994).    I agree with the majority

that the discovery of a wrongful cause requires plaintiffs to

inquire further into any possible causes of action.  Witherell, 85

Ill. 2d at 156.  However, I part company with my colleagues on

whether a plaintiff who has ceased her inquiry into the cause of

injury or death--in reliance on the report of a section 2--622

expert whose participation is both mandated and immunized by the

State--as a matter of law is obligated to continue her inquiry or

risk the limitations period running against an undiscovered

defendant.  According to our supreme court, the statute of

limitations commences when "the injured person becomes possessed of

sufficient information concerning his injury and its cause to put

a reasonable person on inquiry to determine whether actionable

conduct is involved."  (Emphasis added.)  Knox College, 88 Ill. 2d

at 416.  The majority interprets this passage as creating a one-way

rachet: once an injured person's duty to inquire arises, it can not

abate.  I disagree.

     The majority states Beasley v. Abusief, 146 Ill. App. 3d 54

(1986) rejected the argument that the opinion of a plaintiff's

first consultant, "which negated a cause of action, should have

been considered as tolling the two-year limitations period until

the plaintiff received the second consultant's section 2--622

certification of negligence."  (Emphasis added.)  Slip op. at 15. 

Beasley should not be relied on.  First, Beasley did not involve a

report by a section 2--622 expert.  Indeed, it could not.  The

Beasley complaint was filed on November 28, 1983.  Section 2--622

was added to the Code of Civil Procedure (735 ILCS 5/1--101 et seq.

(West 1994)) by Public Act 84--7, section 1, on August 15, 1985. 

Pub. Act 84--7 §1, eff. August 15, 1985.  Therefore, section 2--622

applies only to cases filed on or after August 15, 1985.  See Ill.

Rev. Stat. 1985, ch. 110, par. 2--622, citing Ill. Rev. Stat. 1985,

ch. 110, par. 2--114 (stating that P.A. 84--7 " 'takes effect

August 15, 1985, and applies to all cases filed on or after that

date' ").  Understandably, therefore, Beasley does not discuss

section 2--622 or its affect on the Witherell discovery rule and

whether it is reasonable for a plaintiff to suspend inquiries in

reliance on a section 2--622 report and consequently fail to

discover a particular defendant's conduct was a wrongful cause of

injury or death.  Second, unlike the present case, the plaintiff in

Beasley had an opportunity to present evidence on whether the

limitations period had run.  Beasley, 146 Ill. App. 3d at 55-56, 59

(a jury determined when the plaintiff " 'knew or through the use of

reasonable diligence, should have known' " her injury was caused by

defendant's treatment).  Had plaintiff in the present case been

afforded the same opportunity to present evidence as the Beasley

plaintiff, I would have no trouble affirming the trial court.  My

objection is to the per se rule fashioned by the majority that

forecloses any examination of the nature, quality, and validity of

the State-mandated section 2--622 examination and report.

     I respectfully suggest that the majority's per se rule imposes

hardships on injured persons far outweighing its benefits.  The

purpose of a statute of limitations is to balance the hardship to

injured persons barred from presenting their issues, against the

hardship to defendants based on the increasing difficulty of proof

with the passage of time.  Nolan v. Johns-Manville Asbestos, 85

Ill. 2d 161, 167-68 (1981).  Medical negligence defendants will not

be burdened by increasing difficulties of proof.  Medical

negligence cases typically turn on opinion witnesses to establish

the standard of care and breach of that standard.  See DeLuna v.

Saint Elizabeth's Hospital, 147 Ill. 2d 57, 70 (1992).  This

testimony, like the section 2--622 reports, is premised on medical

records.  The utility of these records, unlike the memory of

occurrence witnesses in traditional negligence cases, is unaffected

by the passage of time.  Therefore, there is little, if any,

hardship to defendants based on increasing difficulty of proof. 

Conversely, the majority's per se rule drastically limits the

applicability of the discovery rule.  This, in conjunction with the

good faith immunity provided to section 2--622 health

professionals, increases the likelihood injured persons will be

left without recourse.  Additionally, refusing to adopt a per se

constructive notice rule would not, indeed by law it could not,

extend an injured person's time to bring suit beyond section 13--

212(a)'s absolute four-year date.  See 735 ILCS 5/13--212(a) (West

1994)(stating that "in no event shall *** [a medical negligence]

action be brought more than 4 years after the date on which

occurred the act or omission or occurrence alleged in such action

to have been the cause of such injury or death").

       Therefore, I would reverse the trial court's order entering

summary judgment and remand the cause for either a full evidentiary

hearing or a bifurcated trial.  The issue to be determined would be

whether Lindemann's investigation or the resulting section 2--622

report suffered from any defect sufficient to render reasonable

plaintiff's failure to discover Valika's conduct was a wrongful

cause of decedent's death.